## E. C. VOGT, AGENT, v. GANLISLE HOLDING COMPANY AND OTHERS.[1]

June 16, 1944.

No. 33,764.

[1]Reported in 15 N. W. (2d) 91.

*Louis H. Joss,* for appellant.
*Joseph F. Cowern,* for respondents.

YOUNGDAHL, JUSTICE.

Plaintiff appeals from an order granting judgment on the pleadings in favor of defendants, wherein plaintiff seeks to compel specific performance of a certain agreement involving the Piedmont Apartments, located in the city of St. Paul.

The amended complaint alleges the following facts: On December 31, 1940, the Baltimore Investment Company, in which plaintiff was an officer and director, owned the apartments subject to a mortgage in favor of one Burns, which had been foreclosed and sold at sheriff's sale for $11,000. The period of redemption had not expired. The property was of the reasonable market value of $100,000, and the personal property therein, subject to a chattel mortgage in which plaintiff had an interest, was reasonably worth $20,000. On December 31, 1940, plaintiff, as agent, entered into an agreement with defendant Ganlisle Holding Company, hereinafter referred to as Ganlisle, by the terms of which Ganlisle was to purchase the property from Burns for $25,000 and hold it for future resale to plaintiff at a substantially increased amount; it being understood and agreed between plaintiff, Burns, and Ganlisle that no redemption would be made in consideration of Burns's agreement to convey the premises to Ganlisle. No redemption was in fact made, but it developed that Ganlisle was unable to purchase the premises for the price agreed upon but could buy it for a consideration of $43,050. Because of the inability to purchase the property under the terms of the original agreement, a new agreement was entered into be-

tween plaintiff and Ganlisle on May 22, 1941, which provided that Ganlisle purchase the apartments at the increased price and hold the same for resale to plaintiff under certain terms and conditions. Ganlisle purchased the property and, in order to finance the transaction, executed a first mortgage on the property to the Minnesota Federal Savings & Loan Association in the sum of $25,000, gave its note to Burns for $8,500, and a note to A. B. Christofferson for attorney's fees in the sum of $2,500. A second mortgage on the property was executed and delivered to Burns and Christofferson for $11,000 to secure the two notes. On January 23, 1941, Ganlisle entered into possession of the premises and thereafter collected the rents and profits. Under the terms of the agreement, Ganlisle was to pay all expenses of operating the property and to make all payments upon the mortgage indebtedness from the rents so collected, with any excess therefrom to be applied to plaintiff's credit on the purchase price. Plaintiff alleges that he demanded a statement in writing as to the receipts and disbursements, which defendants refused, and that Ganlisle appropriated to its own use rents which should have been applied to plaintiff's credit; that plaintiff has been prevented from performing his obligations under the contract because of the conduct of the defendants and their refusal to account to him; and that plaintiff has performed all obligations of the contract on his part to be performed and is willing and able to comply with its conditions upon the making of a proper accounting by Ganlisle. Defendants' answer admits the execution of the agreement and pleads the provisions thereof in denial of plaintiff's right to recover. The reply is substantially a general denial.

■ Defendants' motion for judgment on the pleadings has the same effect as a general demurrer, and for purposes of the motion the allegations of the amended complaint and the reply must be taken as true. 5 Dunnell, Dig. & Supp. §§ 7689, 7690(a), 7693; N. W. Upholstering Co. v. First Nat. B. & T. Co. 193 Minn. 333, 258 N. W. 724.

■ Attached to the amended complaint and made a part thereof by reference are the two contracts entered into between the parties,

*i. e.*, the original agreement of December 31, 1940, and the later one of May 22, 1941. The first contract involved several properties other than the Piedmont Apartments and remained in effect insofar as those properties were concerned. In the preamble to the later contract it was stated that efforts to purchase the Piedmont property under the original agreement had failed, and that the parties had agreed to new terms in respect to the property and desired to reduce the agreement to writing. It is clear, therefore, that the contract of May 22, 1941, together with plaintiff's exhibit D[2], which is a letter supplementing it, entirely superseded the original agreement with respect to the Piedmont Apartments. Therefore, in determining whether plaintiff has stated a cause of action in his amended complaint, we are concerned only with the provisions of the later contract and plaintiff's exhibit D.

Plaintiff asserts that the contract is one of purchase and sale and that, since notice to terminate was not served upon him, he is entitled to specific performance despite the fact that the agreement specified December 1, 1942, as the expiration date. Defendants contend that the agreement is an option contract and by its own terms expired on that date, since the conditions required to be fulfilled by plaintiff had not been met.

After a careful examination of the provisions of the contract, we have no doubt that the agreement was intended by the parties to be an option contract rather than one of actual purchase. The provisions of the agreement indicate that plaintiff was given the priv-

---

[2] A letter dated May 22, 1941, from Ganlisle to plaintiff supplementing the contract of even date and modifying it to this extent: "The contract provides that upon the purchase of the Piedmont Apartment building by you, you are to pay off the mortgage indebtedness to Minnesota Federal Savings and Loan Association of St. Paul before we shall be required to sell the property to you. We hereby agree that in the event the Minnesota Federal Savings and Loan Association consents to the sale of the property to you without the payment to it of the balance of the first mortgage indebtedness, that we will sell the property to you subject to such first mortgage indebtedness, provided all of the other conditions of the contract are fully complied with."

ilege of purchasing the property at a future date, but there was no actual sale to him. Under its terms, Ganlisle agreed to sell to plaintiff *"at any time up to and including the first day of December, 1942."* It further provided that plaintiff *"at the time of purchasing said property, shall pay"* the indebtedness due the Minnesota Federal Savings & Loan Association and that due to Burns and Christofferson, the mortgagees. Plaintiff assumed and agreed to pay the unpaid balance of improvements incurred *"between the date hereof and the date of purchase by said Vogt."* Ganlisle was to have the exclusive right of possession *"until such time as the party of the second part [plaintiff] has purchased the same * * * and the party of the second part shall have no right whatsoever to participate in the management of said property until he has purchased the same * * *."* Then again it is provided that the excess of profits over expenses shall be credited to the contract for deed *"in the event said second party shall purchase said property."* It is stated therein that *"in the event that said second party shall purchase said property as hereinbefore set forth,* all reasonable expenses which the Company may deem necessary to the operation of said apartment building shall be deemed to be expense of operation."* Moreover, the contract required that *"in the event that said second party shall purchase the property * * * then the party of the second part shall be charged with interest upon the sum of * * * ($40,000) * * * from the date"* of the contract *"to the date * * * the purchase of said property by said second party is consummated * * *."* Finally, it was provided that *"in the event that the party of the second part shall fail, for any reason whatsoever, to purchase said property in accordance with the terms hereof, on or before December 1, 1942 the obligation of the party of the first part to sell said property to said second party shall cease and terminate."* (Italics supplied.)

The italicized provisions of the agreement clearly indicate that it was an option contract. Plaintiff was not obligated to purchase the property but was afforded an opportunity and privilege of doing so should he desire to comply with the conditions by a time certain. The terms of the agreement are well within the purview of what

constitutes an option contract as defined by City of Minneapolis v. Republic Creosoting Co. 161 Minn. 178, 183, 201 N. W. 414, 416:

" 'An option is a privilege given by the owner of property to another to buy the property at his election. It secures the privilege to buy and is not of itself a purchase. The owner does not sell his property; he gives to another the right to buy at his election.' Western Union Tel. Co. v. Brown, 253 U. S. 101, 40 S. Ct. 460, 64 L. ed. 803.

"While an option is not of itself a purchase of the property in question, it is literally the purchase *of a right to buy property* if the optionee elects to do so." 6 Dunnell, Dig. & Supp. § 10016, and cases cited.

■ Plaintiff takes the position that, conceding the agreement to be an option contract, the lower court nevertheless erred in granting judgment on the pleadings because of the general allegation in the complaint that plaintiff has complied with all the terms of the contract on his part to be performed. For authority he relies upon Minn. St. 1941, § 544.23 (Mason St. 1927, § 9273), which provides:

"In pleading the performance of conditions precedent in a contract, it shall not be necessary to allege the facts showing such performance, but it may be stated generally that the party duly performed all the conditions on his part; * * *."

It is unnecessary to consider the applicability of that statute to the option contract here, for plaintiff concedes in his complaint that he has not performed its conditions. In paragraph 14 thereof he attempts to justify his nonperformance by alleging that he "has demanded an accounting from said defendants of the rents and profits of said property *in order that plaintiff might fulfill the terms of his said contract with defendants.*" Further, in paragraph 22 he alleges that it was the duty of defendants to account to plaintiff for the rents and proceeds from the premises *in order that "he [plaintiff] might fulfill the terms of his contract with the defendants."* (Italics supplied.)

Specific allegations in a pleading control over general ones. 5 Dunnell, Dig. & Supp. § 7722. N. W. Upholstering Co. v. First Nat. B. & T. Co. 193 Minn. 333, 258 N. W. 724; Gile v. Yellow Cab Corp. 177 Minn. 579, 225 N. W. 911; Wiseman v. N. P. Ry. Co. 214 Minn. 101, 7 N. W. (2d) 672. The general allegation, therefore, that plaintiff has complied with all the terms of the contract must give way to the specific admission on his part that he has not performed because of defendants' failure to furnish an accounting. Moreover, the general allegation that plaintiff stands ready and willing to perform upon the application of proper credit of the rents does not avail him here. He does not allege that he ever communicated to defendants the fact that he was at any time ready and willing to perform under the contract. Defendants were not obligated under the agreement to furnish a written statement of rents and expenses. Under its terms, Ganlisle was to have the exclusive right of possession of the premises until such time as plaintiff purchased the same and had fully complied with the terms and conditions to purchase as specified therein, and until that time plaintiff was to have no right whatever to participate in the management thereof. It is apparent that the preparation of a written statement involving receipts and disbursements of 144 apartment units would have been an expense which defendants were not required to incur. Plaintiff does not allege that he ever made a request to inspect the books and records of defendants. No doubt, if such request had been made and refused, he would have had an adequate remedy under the statute to secure such inspection.

■ Under the option contract here plaintiff was required to perform the following conditions on or before December 1, 1942, before he was entitled to a contract of purchase: Either pay the entire balance due on the mortgage indebtedness to Minnesota Federal Savings & Loan Association or obtain the mortgagee's consent to the conveyance without payment thereof; pay the entire balance due on the second mortgage to Dorothy A. P. Burns and A. B. Christofferson. In addition to these specific obligations of payment, plaintiff was to assume and agree to pay other indebtedness against

the property. None of these conditions have been fulfilled. Nor is there any allegation of tender having been made. Plaintiff concedes his nonperformance, but pleads justification because of not having received a statement of the receipts and disbursements from defendants. As heretofore stated, this plea is unavailing to plaintiff here. Under the contract, plaintiff had no obligations until such time as he elected to comply with the conditions and purchase the property, nor did defendants have any obligations unless plaintiff elected to purchase within the specified time. Plaintiff has no cause of action under the option contract unless within the life of the agreement he made the necessary payments or tendered payment and it was refused. Of course, in option contracts, as in other contracts, it is necessary to look to the instrument itself to determine the intention of the parties. It is conceivable that an option contract might contain conditions to be fulfilled by the purchaser concurrently with the duty of the seller to convey the property; and, if a time certain for performance were not specified, tender of performance before suit would not be required to sustain an action for specific performance. And in cases where a tender or offer would otherwise be necessary, it becomes unnecessary if it appears that it would be vain and useless because of an indicated refusal to perform. Gassert v. Anderson, 201 Minn. 515, 276 N. W. 808; Morgan v. Ibberson, 215 Minn. 293, 10 N. W. (2d) 222. The option contract in the case at bar, however, clearly indicates that the parties intended that plaintiff was to perform the conditions therein before the expiration date in order to create the obligation on the part of defendants to convey the premises in question. Actual payment, or tender thereof, is an essential part of the cause of action in a contract of this character. As expressed in Martin v. Walker, 84 Minn. 8, 9, 86 N. W. 467, 468:

"* * * The option contract itself did not vest in the plaintiff any interest in the lands, nor obligate him to purchase them. It merely gave him the privilege of acquiring an interest therein by performing the stipulated conditions as to the payment of one-fifth of the purchase price, or tendering performance thereof, within the life of

the option. Therefore the finding of fact that he did neither the one nor the other supports the conclusion of law that plaintiff had no cause of action."

In Ferch v. Hiller, 209 Minn. 124, 128, 295 N. W. 504, 506, the necessity of performing the conditions imposed in an option contract is aptly expressed:

"* * * Until an option is effectively exercised, it is a mere unilateral undertaking, and if the time in which it is to be exercised expires before its terms and conditions are met with, it lapses."

The rule has become well established that, in an attempt to enforce the covenants in an option to purchase, "Payment of the stipulated sum or tender thereof within the time limited is an essential condition to the consummation of any binding contract of sale." 4 Dunnell, Dig. § 5404; 12 Am. Jur., Contracts, § 333.

Not having performed or tendered performance and having shown no proper justification for such failure, plaintiff's rights under the option contract expired on December 1, 1942. His amended complaint failed to state a cause of action, and the court therefore properly granted judgment for defendants on the pleadings.

Affirmed.