SPRAGUE v. VOGT et al.
No. 13054.

Circuit Court of Appeals, Eighth Circuit.
July 30, 1945.

M. E. Culhane, of Minneapolis, Minn., for appellant.

Joseph F. Cowern and John B. Burke, both of St. Paul, Minn. (Scott, Burke & Scott, Kyle & Kyle, and Wm. H. Gurnee, all of St. Paul, Minn., on the brief), for appellees other than E. C. Vogt.

Before SANBORN, WOODROUGH, and THOMAS, Circuit Judges.

WOODROUGH, Circuit Judge.

This appeal is taken to reverse a summary judgment of dismissal of an action brought by the trustee in bankruptcy of the Baltimore Investment Company to set aside alleged transfers of the property of the company claimed to have been made without consideration to the company and in fraud of its creditors, and to recover the property for the estate. The summary judgment was entered by the court upon hearing, under authority of Rule 56, F.R.C.P., 28 U.S.C.A. following section 723c, of a motion for such judgment, accompanied by the pleadings and affidavits in support and in opposition. The appellant asserts that the judgment was erroneous because his complaint shows on its face that it states a claim against defendants upon which relief can be granted, and the showing on the hearing of the motion discloses that there is a genuine issue as to material fact to be tried. He contends that he was and is entitled to a trial of the case in ordinary course.

.The trustee's complaint is lengthy and includes allegations to the effect: That the Baltimore Investment Company was adjudicated a bankrupt on petition filed March 4, 1943, and that claims of unsecured creditors aggregating more than $6,000 have been filed and are unpaid. That at all times on and after August 1, 1933, the investment company was the owner of the property in St. Paul known as "Piedmont Apartments," consisting of 144 rental units and the furnishings therein, the realty being of the value of $100,000 and the personal property of the value of $20,000 at relevant dates. That the total rental value was $50,000 a year, and substantially all of the rental units were rented at all times since June 1, 1941.

That in December 1940 and thereafter, said property was the only property owned by the bankrupt. At that time Dorothy A. P. Burns, who was owner of a first mortgage on the realty in the amount of $11,000, had foreclosed her mortgage to the point of sale and issuance of sheriff's certificate of sale to her from which redemption could be made on or before January 22, 1941. The realty had also been sold for taxes amounting to about $38,000 and the time for redemption from the tax sale would expire about June 1, 1941.

That E. C. Vogt owned a majority of the capital stock of the bankrupt corporation and he and one C. W. Hart were directors and officers and controlled and dominated it. That while the company's affairs were in the situation described, and the expiration of the period of redemption from Mrs. Burns' mortgage foreclosure sale on January 22, 1941, was imminent, one J. Lisle Jesmer, a lawyer, acting for his corpora-

tion, Ganlisle Holding Company, of which he was the alter ego, entered into an agreement in writing with E. C. Vogt of date December 31, 1940, attached to the complaint and identified as Exhibit "A," concerning the clearing of the title to the bankrupt's property from the tax and mortgage sales and from a chattel mortgage said to cover the furnishings; and on January 9, 1941, Mrs. Burns, having full knowledge of the contract, and to carry out a previous oral agreement with E. C. Vogt and J. Lisle Jesmer, gave Ganlisle Holding Company an option in writing wherein she agreed to take title to the realty by virtue of her foreclosure sale if there was no redemption, and then convey it to Ganlisle for the sum of about $8,500.[1]

That the contract, Exhibit "A" (subsequently amended by Exhibit "D" between the same parties), included provisions by which it was agreed that if Ganlisle Holding Company obtained the property it would sell and Vogt, agent, would buy it on certain conditions, one of them being the assumption of a $25,000 mortgage on the property, which it was agreed should be executed by Ganlisle and the proceeds applied in discharge of Mrs. Burns's mortgage and the tax sale, it being known to the contracting parties that the taxes could be settled for $18,500 and that Mrs. Burns would reduce her lien from $11,000 to $8,500. That further and supplemental contracts were subsequently entered into between Mrs. Burns and Jesmer's corporation, and between Jesmer's corporation and Vogt, agent (including Exhibit "D," above referred to), looking to the same object, i. a., of clearing the title of the Burns mortgage sale and the tax sale and a chattel mortgage said to exist against the personalty so that the new loan could be made and secured by first mortgage, copies of all of which writings were attached to the complaint.

That after the expiration of the statutory period for redemption from the mortgage foreclosure sale and in February 1941, Mrs. Burns did apply to the District Court of Ramsey County, Minnesota, under Section 508.58, Minn.St.1941, Torrens Registration Act, for a certificate of title to the real property and registration thereof, alleging that through the foreclosure sale and lapse of the redemption period she had become the owner in fee of the property subject only to her contract to sell it to Jesmer's corporation (Ganlisle), and after due notice to parties interested, including Baltimore Investment Company and apparently some but not all of its creditors, and hearing, the court ordered certificate and registration of title in Mrs. Burns, subject to her contract to sell, as prayed. Upon completion of such registration the property was conveyed by Mrs. Burns and her husband to Jesmer's corporation (Ganlisle).

A compromise was effected with the state whereby the $38,000 tax liens were settled for $18,500. The sum of $25,000 was borrowed from the Minnesota Federal Savings and Loan Association on first mortgage of the real and personal property of which $18,500 was applied on the tax settlement. Jesmer's corporation did not use any part of the $25,000 to pay the $8,500 to Mrs. Burns called for in its written contract with her, referred to in the Torrens proceedings, but gave to her and one Alvin B. Christofferson, an attorney, a second mortgage on both the real and personal property for $11,000, securing a note to her for $8,500, and a note to him for $2,500; said note to Mrs. Burns so secured being the consideration received by her for her conveyance.

It was further charged that under the contract of December 31, 1940, Exhibit "A," Jesmer's corporation, without using any of its money, was to act as the conduit through which title to the real estate so far as the record title was concerned, was to pass from Mrs. Burns to E. C. Vogt, and that E. C. Vogt and J. Lisle Jesmer entered into the contract for the purpose of defrauding the unsecured creditors of the Baltimore Investment Company and especially those named in the complaint as having unpaid claims filed in the bankruptcy by making it appear from the record title that the title had passed to Mrs. Burns beyond redemption (whereas, it is argued that in truth only a lien was intended to be claimed, and the right of the investment company to redeem was at all times preserved to it by the agreements of Vogt, Jesmer and Mrs. Burns).

---

[1] Jesmer's agreement with Vogt, called Exhibit "A," amended by Exhibit "D", is a lengthy document and the purport and the inferences as to the intent of the parties to be drawn from its terms are disputed, and it appears unnecessary to set them all out here. They are discussed in Vogt v. Ganlisle Holding Co., 217 Minn. 601, 15 N.W.2d 91.

798

The decree for registration of the title (also attached to the complaint, Exhibit "C") recited that Jesmer's corporation (Ganlisle) "is now in possession of said premises under said contract for deed," meaning a contract for deed given by Mrs. Burns and her husband to Ganlisle of date May 20, 1941 (attached to the complaint, Exhibit "B"), which amends or supersedes the previous contract between the same parties of date January 22, 1941. In that contract it was provided, "It is expressly understood and agreed however, that the vendors [Mrs. Burns and husband] are not obligated hereunder to deliver such possession [of the Piedmont realty] but the vendee, if it desires to take possession shall use its own measures for that purpose," and the conveyance which Mrs. Burns promised in the contract was to be "a special warranty deed of said premises." The complaint alleged that J. Lisle Jesmer purporting to act for Ganlisle Holding Company, and later for another of his corporations, the Jesmer Company, to which the property was conveyed without consideration and of which he was the "alter ego," entered into possession of the real and personal property on or about January 22, 1941, and has remained in possession thereof at all times since and has at all of said times and still is collecting the rents and profits and claiming to be the owner.

The trustee's claim that the personal property of the bankrupt (the apartment furnishings), of the alleged value of $20,000, which was the only remaining asset of the bankrupt, was transferred in fraud of creditors, is not entirely distinct and separate from his claims as to the alleged fraudulent transfer of the realty. It was alleged that "without this furniture, fixtures and equipment or similar furniture, fixtures and equipment, the Baltimore Investment Company would be unable to rent said apartments furnished," and "That in furtherance of the fraud, hereinbefore alleged, and without corporate action, and without consideration to the Baltimore Investment Company, and for the use and benefit of E. C. Vogt and J. Lisle Jesmer, an alleged bill of sale of all of the furniture, fixtures and equipment of the Baltimore Investment Company was made by E. C. Vogt to Ganlisle Holding Company. That E. C. Vogt purported to act for the Baltimore Investment Company in making such bill of sale."

J. Lisle Jesmer and his corporations were alleged to be insolvent and the prayer of the complaint seeking recovery of the real and personal property for the bankrupt estate included a prayer for the appointment of receiver. The complaint makes no claim that the creditors of the bankrupt had or have any rights in the Piedmont property superior to the Burns first mortgage lien or the tax lien, or any lien that might have existed prior to the date of the filing of the petition in bankruptcy. It concedes priority of Mrs. Burns's lien on the realty to the extent of any balance of her debt still unpaid to her, and priority to the savings and loan association for the amount of its money which was applied in settlement of the tax lien.

But the gist of the complaint is that J. Lisle Jesmer, and the two corporations of which he is said to be the alter ego, obtained the possession, rents and profits and apparent title to the bankrupt's real and personal property through transfers to him made or suffered by the bankrupt without any consideration to which the creditors could look for payment; that Jesmer had accomplished the result through the agreements and actions of the officers of the bankrupt controlling its affairs (Vogt), and through the action of the bankrupt's mortgagee who, it was charged, had knowledge of such agreements and actions, and that the transactions by which the bankrupt was divested of its property and Jesmer and his corporation were invested therewith, were in fraud of the creditors, represented by the plaintiff trustee.

The defendants in the action respectively filed answers to the complaint. Mrs. Burns asserted that she has a valid second mortgage on the real and personal property in the amount of $8,500, executed by Ganlisle Holding Company, and remaining unpaid. Minnesota Federal Savings and Loan Association that it has a valid first mortgage in the amount of $25,000. J. Lisle Jesmer, Ganlisle Holding Company and the Jesmer Company answered jointly, asserting ownership of the property in the Jesmer Company subject to the first and second mortgages. Fraud was denied, and the decree for the registration of the title and an adjudication in a suit brought by E. C. Vogt, agent, against Jesmer and his corporation in 1942, were pleaded as estoppel and res adjudicata, respectively. E. C. Vogt also answered, but disclosed no claim

of interest in the property. He alleged, i. a., "that the Baltimore Investment Company received no consideration for the execution and delivery of the bill of sale," which was signed by him for the Baltimore Investment Company and purported to transfer the personal property of the bankrupt from the bankrupt to Ganlisle Holding Company.

After the answers had been filed, defendants filed the motion for summary judgment of dismissal, upon the sustaining of which the summary judgment for dismissal appealed from is based. The motion stated that it "is based upon the following grounds:

"(1) That the complaint fails to state a claim against the defendants, or either of them, upon which relief can be granted.

"(2) That the Baltimore Investment Company and its Trustee in Bankruptcy are estopped from now asserting any interest in the property involved.

"(3) That the issues presented are res adjudicata by reason of the facts set forth in the verified answers and the affidavits attached thereto."

The order entered after hearing on the motion was as follows:

"On the pleadings, files and records in the case, the briefs and arguments of counsel, and on due consideration, it is

"Ordered, That the motion to dismiss the above entitled action be, and it hereby is, sustained and that said action be, and it hereby is, dismissed; and it is further

"Ordered, That the motion for summary judgment on the pleadings be, and hereby is denied."

The court's denial of summary judgment on the pleadings, as it is read in the context, is here taken to mean that the court did not conclude that the complaint failed to state a claim upon which relief could be granted. Section 70 of the Chandler Act, 11 U.S.C.A. § 110, vests the trustee of the estate of a bankrupt with the title of the bankrupt as of the date of the filing of the petition in bankruptcy to all property transferred by the bankrupt in fraud of his creditors, and by its terms a transfer made or suffered by a bankrupt which under a federal or state law applicable thereto is fraudulent as against any creditor of the debtor having a claim provable under the Act, shall be null and void as against the trustee of such debtor and the trustee shall reclaim and recover such property and avoid such transfers. The Minnesota Statute 1941, § 513.23, provides that every conveyance made by a person who will thereby be rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made without fair consideration.

■ The complaint obviously intends to charge that there were such transfers of bankrupt's property, and that there was no consideration, and that the same were fraudulent as to creditors, and without passing on particulars of the complaint, it must be held, as the trial court appears to have done, that a claim was stated therein upon which some relief could be granted.

*The Summary Judgment.*

The other two grounds for summary dismissal set forth in the motion were in very general terms. It would appear from the record on appeal that the defendants contended that the proceedings of record in the District Court of Ramsey County, Minnesota, under the Torrens Registration Act in the name of Mrs. Burns (which were admitted), operated to conclusively estop the trustee in bankruptcy from asserting for the benefit of creditors that the bankrupt had transferred or suffered to be transferred its real estate to Jesmer's corporation without consideration and in fraud of creditors.

As to the transfer of the personal property in the Piedmont Apartments to Jesmer's corporation, claimed to have been in fraud of the creditors, the defendants pleaded a separate defense, that on November 30, 1942, E. C. Vogt, agent, brought a suit in the state court against the parties made defendant in this suit in which suit said Vogt as agent for the Baltimore Investment Company sought to recover the property here involved [real and personal] for the Baltimore Investment Company, and that the suit resulted in an order for judgment on the pleadings in favor of the defendants. That on appeal from the judgment to the Supreme Court of Minnesota, the judgment was affirmed. "That the trustee in bankruptcy of the Baltimore Investment Company through its attorney, M. E. Culhane, appeared in said action and objected to the trustee being a party thereto, one of the reasons given by said trustee being that it was unnecessary for him to be a party to said suit as he would be bound by the result of the action. That by reason of the facts just stated, the issues here pre-

sented are res adjudicata." The record of the proceedings in the suit were adduced on the hearing of the motion and included the decision of the Supreme Court of Minnesota, reported 217 Minn. 601, 15 N.W.2d 91.

The affidavits in support of the motion were to show efforts made to redeem from the tax and mortgage sales on behalf of the Baltimore Investment Company and the attitude of Mrs. Burns toward such redemption and the failure of such efforts; that the savings and loan association made its $25,000 mortgage loan to Jesmer's corporation in reliance on the title registration decree and transfer by Mrs. Burns and husband to Ganlisle and had no knowledge of any interest or claim of interest in the Baltimore Investment Company, and there were other affidavits to connect the investment company with the proceedings and judgment in Vogt's suit in the state court in which neither the company nor the trustee were parties on the record. An affidavit by Mr. Culhane was to the effect, i. a., that the trustee in bankruptcy was not a proper party in that suit, which he says was for specific performance of contracts and not for recovery of the property, and that he had not appeared in the action. His affidavit also states: "That the persons who have actual knowledge of all of the facts relative to the fraudulent acts complained of are, those persons who were parties to such fraudulent acts and the plaintiff in this action cannot obtain affidavits from such persons to support the allegations of the complaint, as is very apparent."

As the court refused to dismiss on the pleadings, it can only be inferred that it gave weight to defendant's supporting affidavits and to the record of the state court proceedings adduced on the hearing. But the record here contains no findings or opinion of the trial court from which this court can discern the specific grounds of its decision or review them. The pleadings with attached exhibits, the affidavits on the motion, and the state court records cover wide fields suggesting the existence of issues of law and of fact, and the general allegations of the motion that plaintiff is estopped "from now asserting any interest in" the property involved and that the issues he presents are res adjudicata, do not sufficiently identify the issues of fact and law that may have been decided.

But the case should not be remanded to correct the mere lack of identification of points decided. It is contended for appellant that the proceedings for summary judgment resorted to by the defendants were not appropriate in this action and that he was entitled to have a trial of the issues in ordinary course.

This court has stated the substance and purport and effect of Rule 56 (c), F.R.C.P., in Walling v. Fairmont Creamery Co., 139 F.2d 318, 322, as follows:

"Rule 56(c) of the Rules of Civil Procedure provides that a summary judgment shall be granted 'if the pleadings, depositions and admission on file, together with the affidavits, if any, show that, except as to the amount of damages, there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' On a motion for a summary judgment the burden of establishing the nonexistence of any genuine issue of fact is upon the moving party, all doubts are resolved against him, and his supporting affidavits and depositions, if any, are carefully scrutinized by the court. The object of the motion is to separate the formal from the substantial issues raised by the pleadings, and the court examines evidence on the motion, not to decide any issue of fact which may be presented, but to discover if any real issue exists. Toebelman et al. v. Missouri-Kansas Pipe Line Co., 3 Cir., 130 F.2d 1016, 1018. When affidavits are offered in support of a motion for summary judgment, they must present admissible evidence, and must not only be made on the personal knowledge of the affiant, but must show that the affiant possesses the knowledge asserted. When written documents are relied on, they must be exhibited in full. The statement of the substance of written instruments or of affiant's interpretation of them or of mere conclusions of law or restatements of allegations of the pleadings are not sufficient. Rule 56(e), Rules of Civil Procedure; 3 Moore's Federal Procedure Under the New Rules, p. 3175, et seq. On appeal from an order granting a defendant's motion for summary judgment the circuit court of appeals must give the plaintiff the benefit of every doubt. Ramsourer v. Midland Valley R. Co., D.C., 44 F.Supp. 523, 526; Weisser, et al. v. Mursam Shoe Corporation, et al., 2 Cir., 127 F.2d 344, 346 [145

A.L.R. 467]; McElwain v. Wickwire-Spencer Steel Co., 2 Cir., 126 F.2d 210."

In Sartor v. Arkansas Natural Gas Corporation, 321 U.S. 620, 627, 64 S.Ct. 724, 728, 88 L.Ed. 967, the Supreme Court said:

"The Court of Appeals below heretofore has correctly noted that Rule 56 authorizes summary judgment only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is, that no genuine issue remains for trial, and that the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try. American Insurance Co. v. Gentile Brothers Co., 5 Cir., 109 F.2d 732; Whitaker v. Coleman, 5 Cir., 115 F.2d 305."

Having regard to the purport and object of Rule 56 so declared, and the duty of this court on appeal from an order made under it, it seems to the writer of this opinion that the Rule did not afford means to summarily dispose of the plaintiff's action here, or any part of it, and that the judgment should be reversed. A majority of this court is of the opinion that the claim of the plaintiff that he has rights in the real property in suit superior to the rights of the defendants Minnesota Federal Savings and Loan Association and Mrs. Burns under their respective mortgages is without substance, and that in so far as the summary judgment disposes of that claim the judgment is not erroneous. We are agreed that, upon the showing made by the defendants in support of their joint motion, it cannot be determined with certainty that the other issues of fact tendered by the complaint are so unsubstantial that they can appropriately be disposed of under Rule 56. Our conclusion is that the plaintiff is entitled to an opportunity to prove, if he can, that he has some right, title, or interest in the personal property in suit and in whatever equity there may be in the real property over and above the liens of the existing mortgages upon it. That one reasonably may surmise that the plaintiff is unlikely to prevail upon a trial, is not a sufficient basis for refusing him his day in court with respect to issues which are not shown to be sham, frivolous, or so unsubstantial that it would obviously be futile to try them.

The judgment appealed from is affirmed in so far as it determines that the mortgage liens of the defendants Minnesota Federal Savings and Loan Association and Mrs. Burns upon the real property in suit are as asserted by those defendants in their answers. The judgment is reversed in so far as it disposes of other issues, and the case is remanded for further proceedings not inconsistent with this opinion.