**RANSBURG ELECTRO–COATING CORP., an Indiana Corporation, Plaintiff,**

v.

**George H. WILLIAMS and Hill Williams, partners, d/b/a Williams Manufacturing Company, and Williams Manufacturing Company, a partnership, Defendants.**

**Civ. A. No. 1862.**

United States District Court
W. D. Arkansas,
Fort Smith Division.

Oct. 26, 1965.

Hume, Groen, Clement & Hume, Chicago, Ill., V. A. Trask, Indianapolis, Ind., Hardin, Barton, Hardin & Jesson, Ft. Smith, Ark., for plaintiff.

Thomas Harper, Ft. Smith, Ark., for defendants.

JOHN E. MILLER, Chief Judge.

The motion of plaintiff, filed August 27, 1965, for summary judgment and the response of defendants, filed October 2, 1965, are before the court for consideration and determination.

Rule 56(c), Fed.R.Civ.P., provides:

"The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, to-gether with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

■ In order to determine whether there is a genuine issue as to any material fact, and if not, then whether plaintiff is entitled, under the applicable law, to a judgment, it is necessary for the court to consider the entire record as required by the rule.

The complaint was filed on February 24, 1965. The plaintiff is a corporation incorporated under the laws of Indiana and has its principal office and place of business in the City of Indianapolis.

The defendants are citizens of Arkansas and reside in the City of Fort Smith. They are engaged as partners in business under the name of Williams Manufacturing Company with an established place of business in Fort Smith, Arkansas.

The plaintiff alleged that it is the owner of five separate patents covering an invention in a method for electrostatically coating various articles; that since January 1962 the defendants have infringed the said letters patent, and have "within this district and division, used apparatus and practiced methods embodying inventions covered and secured" by the patents described in the complaint; that about November 6, 1962, the plaintiff notified the defendants in writing that they had and were continuing to infringe said patents. Copies of the five patents were attached to and made a part of the complaint. The plaintiff prayed that a final injunction be issued against further infringement by defendants and any entity controlled by them; that the defendants be required to account for the damages plaintiff has sustained, and that said damages be increased by an amount not exceeding three times the amount so found or assessed, together with attorneys' fees and costs.

On April 17, 1965, the defendants filed an answer, in which they stated that

they were without information as to the ownership of the patents described in the complaint, and therefore denied that the plaintiff is the owner of said patents; denied that they had in any manner infringed the patents as alleged in the complaint.

On May 13, 1965, the defendants filed an amendment to their answer, in which they alleged:

"2. Further answering, defendants deny that they have infringed any patents belonging to plaintiff by using any machinery or apparatus covered thereby, but state that on or about September 12, 1961, defendants purchased electrostatic painting machinery and equipment from Ionic Electrostatic Corporation, and the same was installed and placed in use by defendants on or about January 10, 1962; that at the time of said purchase, the seller thereof represented to defendants that said machinery and equipment were patented under Patent No. 2,894,485 issued by the United States Patent Office, and a copy of said patent is attached hereto and made a part hereof; that defendants used said machinery and equipment covered by said patent until on or about May 1, 1964, at which time its use was discontinued by defendants, who have not used same since said date. Defendants, therefore, plead the protection of said patent as a complete defense to plaintiff's complaint herein and deny that the same infringes in any manner upon any patents described by plaintiff in plaintiff's complaint."

Jurisdiction of the court is granted by 28 U.S.C.A. Sec. 1338(a).

The patents introduced in evidence and upon which the suit is based, all owned by plaintiff, are as follows:

| Patent No. | Patentee | Issue |
|---|---|---|
| 2,685,536 | W. A. Starkey and E. M. Ransburg | Aug. 3, 1954 |
| 2,794,417 | W. A. Starkey and E. M. Ransburg | June 4, 1957 |
| 2,893,893 | W. W. Crouse | July 7, 1959 |
| 2,893,894 | E. M. Ransburg | July 7, 1959 |
| Re.24,602 | C. C. Simmons (a reissue of original patent 2,808,343, issued Oct. 1, 1957). | Feb. 17, 1959 |

Of these, the following claims are:

| Patent No. | Claims Allegedly Infringed | Typical Claims |
|---|---|---|
| 2,685,536 | 1–11 | 4, 10 |
| 2,794,417 | 3–4 | 3, 4 |
| 2,893,893 | 1, 2, 3, 5, 6, 8–10 | 2, 9 |
| 2,893,894 | 1–8 | 1, 7 |
| Re.24,602 | 1, 6–10, 12, 13, 15–21 | 8, 13, 15, 20 |

———————

The defendants in their answer denied infringement, but they do not deny validity of any patent in suit. The only affirmative defense presented by defendants is that set forth in the amendment to defendants' answer to the effect that the equipment alleged by plaintiff to be infringed is patented under Patent No. 2,894,485, and that the protection of said patent is a complete defense to the plaintiff's complaint.

Ordinarily in patent suits it is the better practice for a court to first resolve the issue of liability before taking up the matter of damages. The plaintiff's motion was filed pursuant to Rule 56, Fed.R.Civ.P., and seeks "a summary judgment for plaintiff holding that the

patents in suit, as to each of the claims asserted, are valid and have been infringed by defendants, enjoining defendants against further infringement, ordering an accounting to determine the damages plaintiff has suffered by reason of such infringement, and awarding plaintiff its costs, and as reason therefor states that, as shown by the pleadings and depositions and by the affidavit of Emery P. Miller with its accompanying exhibits submitted herewith, there is no genuine issue as to any material fact and that plaintiff is entitled to judgment as a matter of law."

The defendants in their response stated:

"* * * that they deny there is no genuine issue as to any material facts herein, and deny plaintiff is entitled to judgment as a matter of law. Defendants file herewith the counter-affidavit of George H. Williams, one of the defendants, controverting the affidavit of Emery P. Miller attached to plaintiff's motion, and state that on the basis of said counter-affidavit and the pleadings and depositions taken herein the record shows on its face there is a genuine issue of fact to be determined by the Court and that plaintiff is not entitled to a summary judgment under Rule 56 of the Federal Rules of Civil Procedure, and they pray that said motion be denied."

The issue of liability involves two questions: (1) Is defendants' affirmative defense sound under the law? and (2) Have defendants infringed?

The five patents in suit are directed to methods and apparatus for electrostatic spray painting, and more particularly to methods and apparatus in which a high-voltage electrostatic field created between a paint atomizer and articles to be painted contributes to atomization of the paint, electrically charges the atomized paint particles as they are formed, and electrostatically deposits the charged particles on the articles to be coated. Because of the electrostatic depositing effect, most of the paint that otherwise would be wasted as "overspray" is saved.

The Starkey '536 and '417 are the basic of the five patents and the other three are in the nature of improvements, and it should be noted that not all the claims asserted in the complaint require participation of the field in the atomizing action.

On or about September 1, 1961, the defendants purchased the machinery and equipment used by them from Ionic Electrostatic Corporation and used same from January 10, 1962, to May 1, 1964, and in their answer the defendants alleged that said machinery and equipment used by them "were patented under Patent No. 2,894,485," referred to in the record as the Sedlacsik patent. It was issued July 14, 1959, and is further referred to as Ionic Model M–50. The deposition of Emery P. Miller, with its exhibits, and the other exhibits in the record submitted by plaintiff in support of its motion, and the deposition of Ray Benoit, the plant superintendent of defendants, fully describe the methods covered by plaintiff's patents and the methods covered by the Sedlacsik patent relied upon by defendants.

In the memorandum brief submitted by the learned attorney for the defendants in support of the defendants' response to the motion, it is stated that while the plaintiff had taken the depositions of Ray Benoit and the defendants, there was no cross examination of the witnesses by counsel for defendants and the defendants have filed no depositions. The defendants complain that they had been unsuccessful in obtaining full answers to interrogatories served upon the plaintiff, but on the date of the hearing on the motion and the date oral arguments were made, the plaintiff filed additional answers to the interrogatories. However, an examination and comparison of the original answers to the interrogatories and the additional answers disclose very little, if any, material and relevant difference. The defendants contend that the affidavit of Emery P. Miller,

who is an employee of the plaintiff, appears to disclose that Mr. Miller is a professional witness, and that his conclusions seem to be based on "the fact that in other cases in other courts plaintiff's patents have been declared valid, and upon the facts there existing an infringement was found to exist." The defendants also stated in the brief, and in the oral argument contended, that the decision of one court between different parties involving the validity of a patent or its infringement is not binding upon different parties in a different case.

The defendants in their brief in opposition to the motion argue that the summary judgment procedure provided by Rule 56 is not ordinarily appropriate for the disposition of a patent case, and cite in support of the contention the case of Long v. Arkansas Foundry Company, (8 Cir. 1957) 247 F.2d 366. The Long case only held that the procedure provided by Rule 56 "is not ordinarily appropriate for the disposition of a patent case." The court then proceeded to demonstrate in its opinion the reason why the summary judgment procedure was not appropriate for use in the case then before the court, but the court did not hold that the procedure was unavailable in a proper case.

In Minnesota Mining & Mfg. Co. v. Superior Insulating Tape Co., (8 Cir. 1960) 284 F.2d 478, the plaintiff contended that a bona fide fact issue existed on the infringement issue. Judge Van Oosterhout, writing for the court, at page 483 stated: "Summary judgments are authorized by Rule 56 of the Federal Rules of Civil Procedure." Then the writer set forth the portion of Rule 56, hereinbefore quoted, and stated:

"Rule 56(e) deals with the form and contents of affidavits. Courts should of course exercise great caution in granting summary judgments and should guard against depriving a party of a trial upon the merits when a bona fide dispute exists upon any material issue of fact. If the movant has made a convincing showing that no genuine controversy on decisive facts exists, 'mere denials unaccompanied by facts which would be admissible in evidence at a hearing are not sufficient to raise a genuine issue of fact.' Minnesota Mining & Mfg. Co. v. United States Rubber Co., 4 Cir., 279 F.2d 409, 415, and cases there cited."

See, also, Dow Corning Corp. v. Chertkof et al., (D.Md.1965) 243 F.Supp. 947; Parke Davis & Co. v. American Cyanamid Co., (6 Cir. 1953) 207 F.2d 571; Steigleder v. Eberhard Faber Pencil Co., (1 Cir. 1949) 176 F.2d 604; Smith v. General Foundry Machine Co., (4 Cir. 1949) 174 F.2d 147.

▮ The patent relied upon by defendants is junior in all respects to each of the patents in suit and, of course, does not affect the validity of any of those patents. The fact that the said Sedlacsik patent was issued does not create a presumption of non-infringement.

In the case of Marian County Co-Op Ass'n. v. Carnation Co., (W.D.Ark.1953) 114 F.Supp. 58, the court cited and reviewed many of the cases decided by the Court of Appeals for the Eighth Circuit upon phases of the summary judgment rule. It does not seem necessary to again cite or quote from the many cases therein cited and quoted from by this court. The judgment of the trial court was affirmed on June 29, 1954, 214 F.2d 557.

In Ford v. Luria Steel & Trading Corp., (8 Cir. 1951) 192 F.2d 880, the late Judge John B. Sanborn, writing for the court, at page 882 said:

"A surmise or belief, no matter how reasonably entertained, that a party cannot prevail upon a trial, will not justify refusing him his day in court with respect to material issues which are not clearly shown to be sham, frivolous, or so unsubstantial that it would obviously be futile to try them. Sprague v. Vogt, 8 Cir., 150 F.2d 795, 801. It has become settled law that a genuine issue as to a material fact cannot be tried and

determined upon affidavits, and that it must conclusively be shown that there is no such issue in the case and that the moving party is entitled to judgment as a matter of law, before a summary judgment can lawfully be entered. See Sartor v. Arkansas Natural Gas Corporation, 321 U.S. 620, 627, 64 S.Ct. 724, 88 L.Ed. 967; Walling v. Fairmont Creamery Co., 8 Cir., 139 F.2d 318, 322–323; Sprague v. Vogt, supra, 150 F.2d 795, 800–801; Colby v. Klune, 2 Cir., 178 F.2d 872, 873; Pierce v. Ford Motor Co., 4 Cir., 190 F.2d 910, 915–916; Dulansky v. Iowa-Illinois Gas & Electric Co., 8 Cir., 191 F.2d 881."

The affidavit of the defendant George H. Williams attached to the defendants' response to the plaintiff's motion states:

"To the best of my knowledge and belief, the said machinery and equipment as installed and used by Williams Manufacturing Company is not identical and substantially differs from that which was used and installed by Proctor Electric Company the defendant in the case mentioned in Mr. Miller's affidavit.

"To the best of my knowledge and belief, any patents issued to H. P. Ransburg, or others, covering the process of applying paint by electrostatic are no longer in force, having expired by the operation of law, and that the use by the defendants of the method of electrostatic painting does not in itself infringe the patents described in the complaint, and that the patents described in the complaint cover only the manner and method of installation of said equipment and the distribution of the painting material."

The affiant then states that "the so-called Ionic equipment until its use was discontinued, as alleged in defendants' answer, differs in material respects from the same as described in the patents described in plaintiff's complaint." A study of the entire affidavit of Mr. Wil-

liams is convincing that none of the statements would be admissible in evidence at a trial. The conclusory statements made in the affidavit by Mr. Williams are not based upon an examination and comparison of the claims of the patents in suit and the claims of Patent No. 2,894,485 relied upon by defendants as a defense to the claim of infringement. The statement that the patents issued to H. P. Ransburg have expired are irrelevant because there are no patents involved in this suit which were issued to H. P. Ransburg. There are some slight structural differences in the accused device and the claims of the patents in suit. For instance, the defendants installed a shield on the accused device to prevent the spreading of paint, but none of the structural differences, including the shield, in anywise alters the question of whether the accused device infringes the claims of the patents in suit. A study of the entire record convinces the court that there is no genuine controversy on decisive facts. The mere denial in the affidavit of Mr. Williams, one of the defendants, is not sufficient to raise a genuine issue of fact. Suffice it to say that a study of the testimony of the witness Ray Benoit, who personally directed the installation and operation of defendants' accused system, is convincing that the claims asserted by plaintiff fully embrace the defendants' accused system, and since the accused subject falls clearly within the claims of the patents in suit, infringement is made out and that is the end of it. Graver Tank & Mfg. Co. v. Linde Air Products Co., (1950) 339 U.S. 605, 607, 70 S.Ct. 854, 94 L.Ed. 1097.

In the last paragraph of the affidavit of Emery P. Miller, the following statement appears:

"I have compared the spray painting method practiced in operation of defendants' Ionic Model M–50 painting system as described in the Benoit deposition with claims 1–11 of patent 2,685,536, claims 1–3, 5, 6, and 8 of patent 2,893,893, claims 1–6 of patent 2,893,894, and claims 6, 7,

and 15–20 of patent Re. 24,602, and I find that every step and characteristic set forth in each of those claims is present in said spray painting method. I have also compared defendants' Ionic Model M–50 apparatus with claims 3 and 4 of patent 2,794,417, claims 9 and 10 of patent 2,893,893, claims 7 and 8 of patent 2,893,894, and claims 1, 8–10, 12, 13, and 21 of patent Re. 24,602, and I find that every element and feature set forth in each of those claims is embodied in said apparatus."

In Ransburg Electro-Coating Corp. v. Proctor Electric Co. and Ionic Electrostatic Corp., (D.Md.1962) 203 F.Supp. 235, the identical patents and claims involved in the instant suit were litigated between plaintiff Ransburg and the manufacturer Ionic. Ionic entered its appearance in the suit, which was originally filed against its customer, Proctor Electric Company, Inc., and conducted the defense for both defendants. The court held that all of the patents were valid and that the claims were infringed by the Sedlacsik Patent No. 2,894,485. The issues were thoroughly and exhaustively tried, and Judge Watkins in that opinion shows without doubt that the Sedlacsik patent infringed the patents and claims in the instant suit. The judgment of the District Court was affirmed on May 14, 1963, by the Court of Appeals for the Fourth Circuit, 317 F.2d 302. As heretofore noted, it seems unnecessary for this court to discuss further the issue of infringement. The accused device in the instant action was manufactured and sold by Ionic to the defendants. The defendants are privy to the prior action and the issues decided in it by virtue of their purchase from Ionic and Ionic's participation in the prior suit with the plaintiff Ransburg.

■ With further reference to the contention of counsel for defendants that "the fact that in other cases in other courts plaintiff's patents have been declared valid, and upon the facts there existing an infringement was found to exist," is not binding and is not conclusive of the issues in the instant case, the defendants in support thereof made the following statement in their brief:

"Nothing seems to be more firmly settled in patent jurisprudence than that the decision of one court between different parties involving the validity of a patent or its infringement is not binding upon different parties in a different case. See Minnesota Mining & Mfg. Co. v. Superior Insulating Tape Co., (8 Cir. 1960) 284 F.2d 478."

In determining whether the judgment in the Ionic case, supra, is binding upon the defendants, it must be borne in mind that Ionic, the manufacturer of the accused device, was a party and, in fact, conducted the defense, and also that the defendants in the instant case purchased the device from Ionic, and the judgment in the Ionic case is binding upon the defendants in the instant case and conclusive of the issue now before the Court.

In the case of Kessler v. Eldred, (1907) 206 U.S. 285, 27 S.Ct. 611, 51 L.Ed 1065, the Court of Appeals for the Seventh Circuit certified certain questions of law which it desired the Supreme Court to answer. The court at page 287 of 206 U.S. at page 612 of 27 S.Ct. stated:

"The decision of the case turns upon the effect of the judgment in the suit which Eldred brought against Kessler. Both manufactured and sold electric cigar lighters. Eldred, being the owner of a patent issued to one Chambers for an electric lamp lighter, brought a suit against Kessler, in which it was alleged by the plaintiff and denied by the defendant that the cigar lighters manufactured by Kessler infringed each and all of the claims of the Chambers patent. On the issue thus joined there was final judgment for Kessler."

The questions that were certified by the Court of Appeals to the Supreme Court are as follows:

"First. Did the decree in Kessler's favor, rendered by the circuit court for the district of Indiana in the suit of Eldred against Kessler, have the effect of entitling Kessler to continue the business of manufacturing and selling throughout the United States the same lighter he had theretofore been manufacturing and selling, without molestation by Eldred, through the Chambers patent?

"Second. Did the decree mentioned in the first question have the effect of making a suit by Eldred against any customer of Kessler's for alleged infringement of the Chambers patent by use or sale of Kessler's lighters a wrongful interference by Eldred with Kessler's business?

"Third. Did Kessler's assumption of the defense of Eldred's suit against Breitwieser deprive Kessler of the right, if that right would otherwise exist, of proceeding against Eldred in the state and district of his citizenship and residence for wrongfully interfering with Kessler's business?

"Fourth. If Eldred's acts were wrongful, had Kessler an adequate remedy at law?"

The court further stated: " * * * the question here is whether, by bringing a suit against one of Kessler's customers, Eldred has violated the right of Kessler," and after a full discussion the court held that the first and second questions should be answered in the affirmative and the third and fourth in the negative.

In Minnesota Mining & Mfg. Co. v. Superior Insulating Tape Company, supra, the court at page 485 of 284 F.2d cited with approval the holding in Kessler v. Eldred, supra, and stated:

"Upon the record before us, the trial court was justified in determining as a matter of law that the accused tape here is the same tape as that involved in the Sears case. In our present case, the named defendant is a customer of Plymouth and the distributor of its tape. Kessler v. Eldred, supra, holds that the final determination of infringement issues between the patent holder and the manufacturer alleged to have infringed, determines the same issues as to the manufacturer's customer. In the course of the opinion, the court states [206 U.S. 285, 27 S.Ct. 613]: 'If rights between litigants are once established by the final judgment of a court of competent jurisdiction those rights must be recognized in every way, and whereever the judgment is entitled to respect, by those who are bound by it.' "

In Minnesota Mining & Mfg. Co. v. United States Rubber Co., (4 Cir. 1960) 279 F.2d 409, the court at page 416 said:

"The cases now before us call for the application of the rule laid down in Kessler v. Eldred, 206 U.S. 285, 27 S.Ct. 611, 51 L.Ed. 1065, where it was held that a patentee who has been unsuccessful in a patent infringement suit against a manufacturer may be restrained from interfering with the business of the defendant by prosecuting other infringement suits on the same patent against the defendants' customers. We meet this situation on this appeal since Minnesota is now seeking to prohibit the defendants from using the product of Plymouth on the same grounds as were found insufficient in the case against Sears."

In United States Pipe and Foundry Co. v. Woodward Iron Co., (4 Cir.1963) 321 F.2d 98, the court at page 99 said:

"Admittedly, a decision on the merits of a patent may be made in an action in which the patentee has not been impleaded. Obviously, how-

ever, where a patent is charged with obtruding upon an earlier one, the controversy is settled with desirable finality only if the respective owners of the patents are parties to the same suit. The adjudication then is conclusive not only upon the owners but as well upon their customers, and, semble, a fortiori, their licensees. Kerotest Mfg. Co. v. C–O–Two Fire Equip. Co., 342 U.S. 180, 185, 72 S.Ct. 219, 96 L.Ed. 200 (1952); Minnesota Mining & Mfg. Co. v. Superior Insulating Tape Co., 284 F.2d 478, 485 (8 Cir., 1960); Minnesota Mining & Mfg. Co. v. United States Rubber Co., 279 F.2d 409, 416 (4 Cir., 1960)."

The Ionic case, supra, was again before the District Court on May 19, 1965, Ransburg Electro-Coating Corp. v. Proctor Electric Co., 242 F.Supp. 28, on a petition filed by Ransburg Electro-Coating against Ionic Electrostatic Corporation to have Ionic adjudicated to be in contempt of the judgment of the court rendered in the original case and for an award of damages, including actual damages, expenses and attorneys' fees for such alleged contempt. In disposing of the petition, Judge Watkins again reviewed his original decision and construed all of the claims in the patents broadly, and held that Ionic was in contempt because of its attempt to evade the effect of the original judgment.

The court is convinced that the motion of plaintiff for summary judgment should be granted, and judgment is being entered holding that the plaintiff's patents in suit as to each of the claims asserted are valid and have been infringed by the defendants, and enjoining the defendants against further infringement. The judgment will also direct the defendants to submit an accounting of the use by them of the infringed device in order that the court may determine at a future hearing the damages plaintiff has suffered, if any, by reason of such infringement, and whether plaintiff should be entitled to recover its costs and a reasonable attorneys' fee.