**MOBIL OIL CORPORATION, Plaintiff,**

v.

**W. R. GRACE & COMPANY**

and

**Pontiac Refining Corp., Defendants.**

**Civ. A. No. 67–H–424.**

United States District Court,
S. D. Texas,
Houston Division.

May 28, 1971.

Supplemental Memorandum Aug. 4, 1971.

George B. Finnegan, Jr., Granville M. Pine and John A. Diaz, Morgan, Finnegan, Durham & Pine, Sanford M. Litvack, Donovan, Leisure, Newton & Irvine, New York City, Ben G. Sewell, Sewell, Junell & Riggs, Houston, Tex., for plaintiff.

William K. Kerr and Herbert F. Schwartz, Fish & Neave, New York City, Palmer Hutcheson, Jr., Hutcheson, Taliaferro & Grundy, Houston, Tex., for defendants.

## MEMORANDUM AND ORDER

NOEL, District Judge.

Plaintiff, MOBIL OIL CORPORATION (hereafter Mobil) sued defendant, W. R. GRACE AND CO. (hereafter Grace) and defendant, PONTIAC REFINING CORP., (hereafter Pontiac) now a division of CHAMPLIN PETROLEUM COMPANY (hereafter Champlin) for infringement upon its product and process patent claims.

Pontiac and Champlin have moved the Court to sever the action against them from the one brought against Grace and thereafter to stay the proceedings as to them. They predicate their request upon the dual assertion that they are only secondarily involved in the litigation and that the entire controversy can be satisfactorily resolved by a judgment in the Mobil-Grace controversy. Grace has moved the Court pursuant to 28 U.S.C. § 1404(a) to transfer the severed action against it to the United States District Court for the District of Connecticut, New Haven Division. Grace asserts that such transfer would promote "the convenience of parties and witnesses" and be "in the interest of justice." After careful study the Court finds that the interests of justice, as well as the convenience of the parties and witnesses, require that the defendants' motions be granted.

Plaintiff instituted this complicated suit with its very large financial consequences to the parties, on May 29, 1967. Since then preparations for trial have proceeded with reasonable diligence but have not been completed. Plaintiff and defendant have noticed depositions yet to be taken, and plaintiff has filed interrogatories directed to defendant. Defendant is awaiting plaintiff's tender of documents which this Court recently ordered it to produce.

During the pendency of this cause, Mobil prosecuted a suit against the Filtrol Corporation in the United States District Court for the Central District of California, Mobil Oil Corp. v. Fil-

trol Corp., Civil Action No. 69–633–F (C.D.Cal. 1/4/71). At issue in that cause was the validity of one or more of the patent claims at issue here. Plaintiff's counsel in that suit represent it here, and Filtrol Corporation's counsel represent Grace, Pontiac and Champlin.

Although not admitted by the parties, the Court has observed that while the California litigation was in active engagement the pretrial discovery in this litigation was not so actively pursued. Pretrial discovery did not start in earnest until October, 1970, when, presumably, the California litigation was winding down.

On December 14, 1970, to expedite adjudication and the previously expressed wishes of counsel, the Court set the instant case for pretrial conference on March 12, 1971 and trial on April 12, 1971. During the pretrial conference counsel informed the Court of the complicated factual and legal issues involved, and asked the Court to prepare its docket for a protracted trial. In answer to the Court's inquiry, counsel announced that they were then ready for trial. However, this announcement proved to be premature.

To insure that the cause would be ready for trial, to aid in the resolution of pending discovery problems, and to discuss with counsel possible reference of the case to a special master by agreement, another pretrial conference was held on March 30, 1971. The request for reference to a special master was predicated upon the Court's announcement that its criminal and civil rights docket would prevent its giving the parties time for a protracted trial commencing April 12, 1971 as previously set. Counsel considered the proposal, and at a pretrial conference held April 2, it appeared to the Court that an agreement between counsel to such reference might be accomplished.

Counsel subsequently informed the Court that they were unable to agree, and on April 14, 1971, defendants filed the motions which are the subject of this Memorandum and Order. These motions were noticed for submission on April 26. As the Court had previously announced it would hear counsel on discovery matters on April 26, 1971, the scope of that hearing was enlarged to include oral argument on the instant motions. The Court heard the oral argument of counsel and took the questions under advisement. Thereafter on May 3, 1971, the Court entered an order staying the submission and/or consideration of discovery and pleading motions until it had acted upon the motions to transfer, sever and stay.

The basic issues in this suit are predicated upon Grace's manufacture, sale and inducement of its customers to use catalysts containing zeolite in their petroleum cracking processes. Mobil asserts that since June, 1964, Grace has manufactured eight types of infringing catalysts, 41,923,815 pounds of which have been shipped into the territorial jurisdiction of the Court for use in the alleged infringing cracking processes. No evidence was offered reflecting the scope of Grace's nationwide infringing activities. Pontiac-Champlin's involvement stems from their purchase and four-year use of 342,000 pounds of one of the products in its Corpus Christi, Texas petroleum refinery. Expressed in percentage, Pontiac-Champlin purchased less than one per cent of the total poundage shipped into this District.

The defendants do not contend that they are not properly joined. Nor do they contend that they were not properly served or that the venue is incorrect. *See*: 28 U.S.C. § 1404(b); F.R. Civ.P. 4. Instead, defendants argue that the cause should be restructured by severance to enable the primary parties to have trial in a different forum.

■ As presently postured, this cause is not susceptible to transfer to Connecticut because that forum is not one in which Pontiac-Champlin could have been originally sued without their waiving their statutory service and venue rights. *See*: 28 U.S.C. §§ 1400(b) and 1404(a); Hoffman v. Blaski, 363 U.S. 335, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960); Foster-

Milburn Co. v. Knight, 181 F.2d 949 (2nd Cir. 1950) (per Learned Hand, J.). There is no suggestion by plaintiff, however, that Grace could not have been sued originally in Connecticut, its place of incorporation.

 This Court is faced first with the threshold questions whether (i) to sever the causes of action against properly joined parties, (ii) to transfer the cause as to the one defendant, and (iii) thereafter stay the cause as to the other. The criteria for determining the three questions involve the same relevant criteria— namely the determination by the Court of whether the movants have made a clear showing that the balance of convenience and the interests of justice require the proposed actions. Wyndham Associates v. Bintliff, 398 F.2d 614 (2nd Cir. 1968), cert. denied 393 U.S. 977, 89 S.Ct. 444, 21 L.Ed.2d 438 (1968); Leesona Corp. v. Cotwool Mfg. Corp., 308 F.2d 895 (4th Cir. 1962); affirming and denying mandamus from; 204 F.Supp. 139 (W.D.S.C.1962); Potter Instrument Co., Inc. v. Control Data Corp., 169 U.S. P.Q. 86–89 (S.D.Ind.1971); Burroughs Corp. v. Newark Electronics Corp., 317 F.Supp. 191 (N.D.Ill.1970); General Tire and Rubber Co. v. Jefferson Chemical Co., 50 F.R.D. 112, 114 (S.D.N.Y. 1970).

This Court has the power to sever the claims against properly joined defendants, Wyndham Associates v. Bintliff, supra; 3 J. W. Moore, Moore's Federal Practice, par. 21.05[2] (1970), and to stay the proceedings as to one of them in appropriate circumstances. Landis v. North American Co., 299 U.S. 248, 254– 255, 57 S.Ct. 163, 81 L.Ed. 153 (1936); 1 J. W. Moore, supra, par. 0.204 (1970).

 Mobil cites the cases of Hoffman v. Blaski, supra, Lemelson v. Sears Roebuck and Co., 292 F.Supp. 170 (D.Conn. 1968); and Silver v. Goodman, 234 F. Supp. 415 (D.Conn.1964) for the two-pronged proposition (i) that this Court does not have the power to restructure the parties in this lawsuit to accomplish transfer, and (ii) that even if such power exists, it should not be so exercised because the District Court in the transferee forum would not do so.

To read the cited cases distinguishes them. In none of them was there a discussion of a court's power to transfer a severed cause of action to a forum in which the cause against the transferred defendant could properly have been brought. See for example: Wyndham v. Bintliff, supra, 398 F.2d at 618, Leesona Corp. v. Duplan Corp., 317 F.Supp. 290, 299 (D.R.I.1970).

In *Blaski* the Supreme Court was confronted with a situation where the district court transferred a multiple defendant suit to a forum in which one of the transferred defendants could not have been sued without waiving his rights to proper venue and service. In that situation the Court held that the transferor court did not have the power to transfer the cause to the transferee forum because it was not a forum "where it might have been brought." The Connecticut District Court cases can be construed no further.

In Silver v. Goodman, supra, Judge Zampano refused to transfer a multiple defendant action from Connecticut to New York because one of the defendants could not have been sued there. Likewise, in Lemelson v. Sears Roebuck and Co., supra, another multiple defendant action in which each of them could not have been sued in New York, Judge Zampano followed *Blaski* and *Goodman* in holding that the Court did not have the power to transfer the cause to New York.

There have been numerous federal decisions since *Blaski* which have authorized a federal district court to sever the claims of several defendants to create a new cause of action susceptible to § 1404 (a) transfer. Wyndham Associates v. Bintliff, supra; Leesona Corp. v. Cotwool Mfg. Co., supra; Potter Instrument Co., Inc. v. Control Data Corp., supra; Burroughs Corp. v. Newark Electronics Corp., supra. In these cases the transferred defendant could originally have

been sued in the transferee forum without his consent to service or venue. *Id.*

This procedure is eminently reasonable. Absent this power a federal court would be unable to curtail the powers of a plaintiff to thwart justice by his joinder of a peripherally connected defendant to an action for the sole purpose of accentuating the burdens of trial upon a defendant who otherwise would have been entitled to a § 1404(a) transfer. Wyndham Associates v. Bintliff, supra; Burroughs Corp. v. Newark Electronics Corp., supra.

In light of these decisions, the factual similarity of the instant cause to them, as well as the factual discrepancies between it and those relied upon by plaintiff, this Court concludes that it has the power to grant the defendants' motions. Furthermore, inasmuch as the questions posed here have not been litigated in the transferee forum, this Court is of the opinion that a transfer of the severed action between Mobil and Grace would be construed by the recipient Judge as a warranted exercise of permissible discretion.

■ Before the severance of properly joined parties is permissible, this Court must make three basic determinations, as follows:

*First,* it must determine the degree of involvement each defendant has in the transactions which form the basis of plaintiff's cause of action. The Courts which have allowed severance have determined that the severed but not transferred defendant was only secondarily or peripherally involved in the litigation. *See for example*: Potter Instrument Co., Inc. v. Control Data Corp., supra; Burroughs Corp. v. Newark Electronics Corp., supra; *cf.*: Wyndham Associates v. Bintliff, supra; Leesona Corp. v. Cotwool Mfg. Co., supra.

In *Potter Instrument Co.* and *Burroughs Corp.,* the courts found that the customers of a manufacturer who had sold them allegedly infringing products were only secondarily involved. In each case the charges against the customer stemmed completely from its purchase and dealings with the infringing product. In each it was clear that the charges against the customer could be resolved completely in an adjudication between the plaintiff and the manufacturer.

In *Potter Instrument Co.* the court pointed out that the manufacturer had indemnified its customer for potential infringement liability and was conducting its customer's defense. While in *Burroughs Corp.* the court noted the de minimis percentage of the allegedly infringing product which the customer had purchased did not necessitate its remaining joined to the manufacturer and thereby thwart an otherwise appropriate transfer.

*Second,* this Court must determine if the absence of the secondarily involved defendant from the transferee forum would work an unwarranted inconvenience upon the transferee court or the parties in that forum. This principle was a factor in Leesona Corp. v. Cotwool Mfg. Co., supra; and underlay the decisions in Potter Instrument Co., Inc. v. Control Data Corp., supra; and Burroughs Corp. v. Newark Electronics Corp., supra.[1]

■ Severance would be inappropriate if it would merely lead to piecemeal litigation in separate forums. Impermissible inconvenience, however, does not exist in a case in which the adjudication of the claims leveled against a severed and transferred defendant would include the adjudication of the issues which form the basis of the charges made against the non-transferred defendant. This is especially true where both defendants have potential joint liability, and the transferred defendant can be expected to be able to bear the burden of satisfying

---

1. From its decision in Wyndham Associates v. Bintliff, supra, it is evident that the Court of Appeals for the Second Judicial Circuit would not consider this a separate issue, but, instead, considers it to be one of the numerous criteria to be considered within the third test. It is treated here with higher dignity in the interest of thoroughness.

a judgment rendered in the transferee forum. In a case where these factors exist it is reasonable to believe that the plaintiff would not have to undergo the inconvenience and expense of prosecuting two cases in different forums to achieve the relief which he originally sought in the transferor forum. This is the inconvenience which courts must guard against. In essence, the severance and transfer of the claims against a primary defendant is appropriate when it is apparent that the plaintiff will be able to obtain the substance of the relief he seeks in the transferor forum. *Id.*

*Third,* this Court must balance the factors implicit in its determination of a § 1404(a) motion to determine if the severing out and transfer of the cause against the primary defendant would promote the convenience of the transferred parties and their witnesses, and be in the interests of justice. *See for example:* Wyndham Associates v. Bintliff, supra; Leesona Corp. v. Cotwool Mfg. Co., supra; Potter Instrument Co., Inc. v. Control Data Corp., supra; and Burroughs Corp. v. Newark Electronics Corp., supra.

 Before this Court can grant a motion to stay the proceedings as to the cause of action against a secondarily involved defendant, it must determine that the interests of justice require it. Implicit in this broad determination are the subsidiary determinations that it would be a waste of judicial effort to adjudicate the claim, and the determination that plaintiff would not be substantially harmed by the postponement of this cause of action. *See:* Landis v. North America Co., supra; Potter Instrument Co., Inc. v. Control Data Corp., supra; Burroughs Corp. v. Newark Electronics Corp, supra; *cf:* Lemelson v. Sears Roebuck and Co., supra.

After an examination of the affidavits and their attached exhibits, it is clear that the first and second requirement for the severance and transfer of the Mobil cause of action against Grace have been met, and that the requirements for staying its action against Pontiac-Champlin have been fulfilled. Therefore, if the third criterion for severance and transfer is fulfilled, the action against Grace will be transferred.

Pontiac-Champlin's secondary involvement in the instant case is clear. It is not contested that their defense is being conducted by Grace's defense counsel pursuant to an indemnity agreement between them. In essence the infringement claims against Pontiac-Champlin stem from Pontiac's purchase and use of a minute percentage of one of the eight allegedly infringing products manufactured and sold by Grace. The product involved is allegedly covered by claims emanating from only one of the three patents in suit. Being essentially a customer whose sole transgression is the purchase and use of a small percentage of an infringing product, Pontiac-Champlin can be and should be classified as a secondary or peripheral defendant.[2]

There is no doubt that Mobil can adjudicate the merits of its contentions in

---

2. Plaintiff's attempts to inflate Pontiac-Champlin's involvement by (1) asserting it was a primary infringer and therefore incapable of being a secondary defendant; and (2) pointing out the number of pounds of the infringing product which it purchased, are without merit.

 In Leesona Corp. v. Cotwool Mfg. Co., supra, the Appellate Court ignored appellant's arguments about a customer being a primary infringer of a product and allowed the transfer of the claims against the primary defendant to be severed and transferred. This result is eminently correct. The labeling of the activities of a customer as secondary or primary con-

stitutes no more than a semantic ploy which cannot by itself otherwise increase a customer's involvement in the overall patent infringement of the supplier and manufacturer.

 Mobil's reference to the poundage purchased by Pontiac-Champlin is meaningless. What is important is the realization that Pontiac-Champlin purchased less than one percent of the poundage which Grace shipped into this judicial district alone. There is no indication how many pounds of these products were sold from 1964 to date elsewhere in the nation or world.

an action against Grace without Pontiac-Champlin. Pontiac-Champlin's activities as a purchaser constitute secondary patent infringement and its use of the product make it potentially liable as a primary infringer. Nevertheless, Grace is potentially liable for the same activities—selling the catalysts and inducing Pontiac-Champlin's use of the process. *See:* Mobil's Supplemental Complaint ¶¶ 9 and 10; 35 U.S.C. §§ 271(a) and (b). Therefore, the essence of Mobil's claims against Pontiac-Champlin can be adjudicated in the Connecticut forum without delaying Mobil's opportunity to litigate the contentions underlying its claims against Pontiac-Champlin.[3] Likewise, trial there would not hamper Mobil's efforts to collect damages for the harm, if any, which Pontiac-Champlin caused it as this would be determined in the adjudication of the claims against Grace. Furthermore, it is obvious that a present adjudication of the claim left upon this docket would unnecessarily waste the time of this Court and the parties in duplicative litigation.

In determining if the instant action between Mobil and Grace should be transferred, the criteria enumerated in 28 U.S.C. § 1404(a) are controlling. Section 1404(a) states:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

Federal courts have determined that an application of this statute to a particular case requires a consideration of numerous factors to determine if the movants have made a clear showing that a transfer to a forum not of plaintiff's choosing is appropriate.[4]

In patent infringement and related cases the following are some of the factors which have been held to be pertinent in assisting the courts to balance the ultimate factors contained in § 1404(a):

1. The proximity of each party's business headquarters, officers, legal and patent staffs, research facilities, and manufacturing plants to the forums in question. *See for example:* Leesona Corp. v. Cotwool Mfg. Corp., supra; Potter Instrument Co., Inc. v. Control Data Corp., supra; Burroughs Corp. v. Newark Electronics Corp., supra; Henry I. Siegel Co. v. Koratron Co., 311 F.Supp. 697 (S.D.N.Y.1970); Glenn v. Trans-World Airlines, Inc., 210 F.Supp. 31, 33 (E.D.N.Y.1962).

2. The proximity of each party's documentary and other tangible evidence to the forums in question. *Id.*

3. The proximity of each party's trial counsel to the forum in question. Sweetheart Plastics, Inc. v. Illinois Tool Works, 267 F.Supp. 938, 943–944 (S.D. N.Y.1967); United States v. Swift and Co., 158 F.Supp. 551, 559 (D.C.D.C. 1958); *cf.:* Saraf v Chatham Carpet Mills, Inc., 275 F.Supp. 951 (S.D.N.Y. 1967).[5]

---

3. As Connecticut is Grace's place of incorporation and place of residence for the purposes of 28 U.S.C. § 1400(b), Mobil will be able to offer proof of every alleged act of infringement Grace has committed as a primary or secondary infringer.

4. Plaintiff argues that the court's discretion in applying the statute is very limited because the transfer ousts it from its chosen forum. It relies upon Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947) for this. *Gulf Oil* predates the 1948 venue statute. The statute has been construed as increasing the trial court's discretion in ruling upon transfer motions and as decreasing the importance of the plaintiff's choice of forum.

Norwood v. Kirkpatrick, 349 U.S. 29, 32, 75 S.Ct. 544, 99 L.Ed. 789 (1955); Garner v. Wolfinbarger, 433 F.2d 117, 119 (5th Cir. 1970); Time, Inc. v. Manning, 366 F.2d 690, 698 (5th Cir. 1966); In re Alamo Chemical Transportation Co., 323 F.Supp. 789 (S.D.Tex.1970) (per Noel, J.).

If the factors considered were closely parallel as they were in In re Alamo Chemical Transportation Co., supra, this Court would, as it did there, deny a motion to transfer. *Cf:* Blue Bell Inc. v. Jaymar-Ruby, Inc., 311 F.Supp. 942 (S. D.N.Y.1969).

5. Plaintiff contends that the convenience of counsel is not relevant. This Court

4. The proximity of each party's witnesses, including employees, experts and patentees, to the forums in question. *See for example:* Leesona Corp. v. Cotwool Mfg. Co., supra; Potter Instruments Co., Inc. v. Control Data Corp., supra; Burroughs Corp. v. Newark Electronics Corp., supra.[6]

5. The possibilities of trial delay and the seriousness of the resulting prejudices arising from it if the transfer were granted. *See for example:* Burroughs Corp. v. Newark Electronics Corp., supra, 317 F.Supp. 192; Leesona Corp. v. Duplan Corp., 317 F.Supp. 290, 302 (D.R.I. 1970); Blue Bell, Inc. v. Jaymar-Ruby, Inc., supra, 311 F.Supp. 943–944.

6. The possibilities of judicial economy being achieved by transferring the cause to a forum in which the same or a similar cause is pending. *See for example:* Wyndham Associates v. Bintliff, supra; Leesona Corp. v. Cotwool Mfg. Corp., supra.

■ 7. The determination of which forum would promote a more efficient adjudication by enabling the parties to use process to acquire the testimony of unwilling witnesses, and in which the possibilities of receiving live rather than deposed testimony would be greater. *See for example:* Gulf Oil Corp. v. Gilbert, supra, 330 U.S. at 511, 67 S.Ct. 839; Wyndham Associates v. Bintliff, supra; Henry I. Seigel Co. v. Koratron Co., supra; Blue Bell, Inc. v. Jaymar-Ruby, Inc., supra.[7]

8. The proximity of each forum to facilities in which a judicial view could be taken if needed. *See for example:* Glenn v. Trans-World Airlines, Inc., supra.

■ Plaintiff argues that this litigation has progressed too far in this forum for defendant to make the motion. Its argument is not *in and of itself* a factor preventing transfer. *See for example:* Sypert v. Miner, 266 F.2d 196 (7th Cir. 1959); General State Authority (of Pa.) v. Aetna Cas. & Sur. Co., 314 F. Supp. 422, 424 (S.D.N.Y.1970); Blue Bell, Inc. v. Jaymar-Ruby, Inc., supra, 311 F.Supp. 943–944; Bowers v. A. H. Bull and Co., 144 F.Supp. 646 (S.D.N.Y.

---

disagrees. The cost of counsel's transportation and time in route must be borne by the parties. Therefore this factor directly bears upon the convenience of the parties and costs of litigation. *Id.*

6. Plaintiff contends that the convenience of experts and employees is immaterial, as they are paid for their trouble. It cites Everprest, Inc. v. Phillips-Van Heusen Corp., 300 F.Supp. 757 (M.D.Ala.1969); and Roller Bearing Co. of America v. Bearings, Inc., 260 F.Supp. 639 (E.D. Pa.1966) for this. *Everprest, Inc.* does not help. It does not discount the parties' inconvenience in transporting and diverting employees from their duties, nor the cost of transporting experts to a more distant forum. Instead it seems to eliminate the individual discomfort of the employee, or expert, from the category of witnesses. To the extent this opinion or the other disallows a party's inconvenience in exporting its employees and experts to a more distant forum to be considered, the Court declines to follow it for the reasons stated in footnote 5 above. *See for example:* Sweetheart Plastics, Inc. v. Illinois Tool Works, Inc., supra, 267 F.Supp. at 943–944; United States v. Swift and Co., supra; Clayton v. Swift

and Co., 137 F.Supp. 219 (W.D.N.C. 1956), mandamus denied in Clayton v. Warlick, 232 F.2d 699 (4th Cir. 1956); *cf.:* Gulf Oil Corp. v. Gilbert, supra, 330 U.S. at 511, 67 S.Ct. 839.

In passing, the Court would point out its belief that apparently affluent parties are as entitled to the monetary savings to be gained by trial and pretrial in a closer forum as are less affluent litigants. *Id.*

7. Plaintiff contends that in patent cases deposition testimony is sufficient. Everprest, Inc. v. Phillips-Van Heusen Corp., supra. This Court would qualify and say only minimally sufficient. In technical cases a court often lacks particular expertise. Therefore, the exposure of experts to the court's questioning can often enable the court to grasp critical issues.

Plaintiff contends that because defendant has not asserted its inability to call adverse witnesses, the unavailability of process is irrelevant. This is without merit. Parties are not called upon to disclose the identity of rebuttal witnesses before trial. Therefore, the increased possibility for the use of process to insure their attendance is of importance in assuring a just adjudication.

1956); 1 J. W. Moore, supra, par. 0.145 [4–3] (2nd ed. 1964). Instead, the prejudice caused by the timing of a motion is only one factor to be balanced by the Court in its consideration of whether justice would be served by a transfer.

In several cases courts have expressed their belief that decision of transfer motions is preferable in the later stages of a case. They reason that the trial court can then visualize with more clarity the factors implicit in its determinations. A. C. Nielsen v. Hoffman, 270 F. 2d 693, 696 (7th Cir. 1959) (denying mandamus); Sypert v. Miner, supra.

The cases plaintiff cites are not persuasive. La Chemise La Coste v. Allegator Co., 313 F.Supp. 915, 168 U.S.P.Q. 458 (D.Del.1970); Devex Corp. v. General Motors Corp., 263 F.Supp. 17 (D. Del.1967); Roller Bearing Co. of America v. Bearings, Inc., supra; Coffill v. Atlantic Coastline R. R. Co., 180 F.Supp. 105, 107–108 (E.D.N.Y.1960). Instead, they are consistent with the Court's views of the law. In all but one, material prejudice was found by the court to have been caused by the belated motion. In the other, by way of dictum, the court complained of its burden in having to educate itself in some facets of a partially litigated case which was then transferred to it. The court's real concern was the waste of judicial economy. Devex Corp. v. General Motors Corp., supra. The instant case is obviously distinguishable. No issues, save those connected with discovery and this motion, have been litigated, and the cause is neither ready for trial nor even a meaningful pretrial. Judicial economy would not be wasted by the transfer.

Plaintiff then argues that if the motions are found to be timely an additional factor to be considered by this Court before transfer is the location of this district within an area where there are a great number of catalytic cracking facilities. It does not relate, however, how this enables the parties to expedite the presentation of proof, or would otherwise facilitate the interests of justice. This factor is therefore irrelevant.

Applying the relevant factors enumerated above to the instant case, it becomes clear that the third test for severance and transfer has been fulfilled.

An examination of the affidavits and arguments of counsel disclose that trial in New Haven, Connecticut, would greatly reduce the parties' burdens of producing evidence for trial.

Plaintiff is a New York corporation with its principal place of business, headquarters officers, legal department and patent department in New York City, New York. Its lead and trial counsel, George B. Finnegan, Jr., Granville M. Pine and John A. Diaz of Morgan, Finnegan, Durham & Pine, and Sanford M. Litvack of Donovan, Leisure, Newton & Irvine are located in New York City.

Grace is a Connecticut corporation which, like plaintiff, has its principal place of business, headquarters officers, patent department and legal department in New York City. The headquarters officers of Grace's Davidson Division, the division charged with the responsibility of developing, manufacturing and marketing the allegedly infringing catalysts, are also in New York City. Its lead and trial counsel, William K. Kerr and Herbert F. Schwartz, of Fish and Neave, are located in New York City. Based on the mileage chart which appears on page 25 of "Texaco Travel Atlas by Rand McNally" (1971), it appears that New York, New York is approximately 80 miles from New Haven, Connecticut, and 1650 miles from Houston, Texas. (The mileage to be enumerated herein comes from said mileage chart and is approximate.)

The catalyst research center where Mobil developed the patents in litigation is in Paulsboro, New Jersey. Also located in Paulsboro is the plant where Mobil manufactures its catalysts. Paulsboro, New Jersey, is 180 miles from New Haven, Connecticut and 1550 miles from this forum.

The Grace Davidson Division's main offices are located in Baltimore, Maryland. Its research facilities are located in Clarksville, Maryland, a city close to Baltimore. Baltimore is 270 miles from

New Haven, Connecticut and 1450 miles from Houston. The manufacturing facilities where the Davidson Division manufactures its allegedly infringing catalysts are located in Baltimore, Maryland; Cincinnati, Ohio (703 miles from New Haven, Connecticut and 1115 miles from Houston, Texas); and Lake Charles, Louisiana (1490 miles from New Haven, Connecticut and 175 miles from Houston, Texas).

Neither party has submitted affidavits locating the records and other tangible evidence relevant to the case. It is reasonable to believe, however, that they are located in the offices of the parties' respective counsel, or in their corporate headquarters or research centers. It seems unlikely that copies of relevant manufacturing records would not be duplicated and kept in the parties' headquarters or research centers. Excluding the mileage from the manufacturing plants to the forums in question, it appears that a New Haven, Connecticut trial would reduce the round trip mileage by 8200 miles. If the distance from the manufacturing plants is included,

there is still a savings of 6454 round trip miles.[8]

An examination of the proposed witness lists compiled by each party in preparation for the submission of a pretrial order discloses that the witnesses and the parties would be convenienced by a trial in New Haven. (These lists were exhibits A and B to the affidavit of William K. Kerr, submitted in support of defendant's motion. The lists were not controverted.)

The lists disclose that none of the proposed witnesses reside in the Southern District of Texas and that only two of the 31 witnesses reside in the Fifth Judicial Circuit. Two others reside at points of basic inconvenience to either forum, one living in Chicago, Illinois and the other in Cincinnati, Ohio. The remaining 27 reside in close proximity of the New Haven, Connecticut forum. Twenty-five live near the parties' headquarters, research or manufacturing facilities already noted in New York, New Jersey or Maryland. The remaining two reside in Saddle River, New Jersey, and Perkasie, Pennsylvania.[9] The mileage

---

8. The savings figures were computed by adding the travel figures from each city discussed. The distances to New Haven, Connecticut, were computed in one column and those to Houston, Texas, in another. The difference between these figures doubled equaled the amount of savings.

9. Plaintiff is going to call 21 witnesses (one to be announced) including the patentees. The proximity of the residences of the witnesses to each forum is reflected by the following chart:

| Witnesses and residences | Miles to New Haven | Miles to Houston |
|---|---|---|
| 8 live in or near New York City | 80 | 1640 |
| 8 live in Paulsboro, N.J. | 180 | 1550 |
| 1 lives in Saddle River, N.J. | 115 | 1615 |
| 1 lives in Perkasie, Pa. | 170 | 1648 |
| 1 lives in Chicago, Illinois | 895 | 1113 |
| 1 lives in Dallas, Texas | 1729 | 242 |

Defendant indicated it would call 14 witnesses * (one to be announced). The proximity of the residences of defendant's witnesses to each forum is shown as follows:

| Witnesses and residences | Miles to New Haven | Miles to Houston |
|---|---|---|
| 5 live in or near Baltimore, Md. | 270 | 1450 |
| 1 lives in or near New York City | 80 | 1640 |
| 1 lives in Princeton, N.J. | 115 | 1605 |
| 1 lives in Cincinnati, Ohio | 703 | 1115 |
| 1 lives in Lake Charles, La. | 1409 | 175 |

* Five of these are Mobil employees, four of whom plaintiff listed as "tentative" witnesses. Therefore the mileage information pertinent to them was included in plaintiff's chart. The fifth man (Andrew L. Gaboriault, of New York City) is listed in defendant's chart.

savings which would result from a trial in New Haven, Connecticut, is one of approximately 66,390 round trip miles.

There is no showing made that trial delay would result from transfer. The affidavits submitted by each party are conflicting, and in this regard unpersuasive.

The only basically uncontroverted evidence is a portion of a report prepared by the Administrative Office of the United States Courts, which was submitted by defendant as Exhibit D to the affidavit of William K. Kerr. The portion submitted is Table 10C which statistically sets out the number of jury and non-jury trials held in each federal district court during the 1970 fiscal year ending June 30, 1970. It enumerates the average time to trial after issue was joined. It shows that there were 82 trials held in Connecticut during this period and that 80% of the non-jury ones were reached within one month after issue was joined. By contrast, in this district there were 157 trials and the average non-jury case was not reached until 12 months after issue was joined.

The Court realizes that docket conditions change constantly. There is nothing on this record, however, to indicate the extent of change which has occurred.

 As discovery is not complete, it appears that any prediction of faster trial setting in either forum would be based on conjecture. With the case in this posture it is obvious that the interest of justice would not be affected by a transfer. *Cf.*: Jahncke Service Inc. v. OKC Corp., 301 F.Supp. 886, 869 (D. Del.1969).[10]

At this time problems of witness availability and/or the need for adverse witnesses are not clear. If these problems should arise, however, the transferee forum's advantageous proximity to the location of the announced witnesses and other sources of evidence strongly suggests that it would be the more appropriate forum in which the resolution of these problems could be accomplished.

If a judicial view of a petroleum cracking catalyst research center or refinery should become necessary, it would be less of a burden to transport the New Haven Court and its staff to one of those which this Court judicially notices are located in the Philadelphia-New Jersey-New York City area, than it would be to require the parties and witnesses to bear the economic and intrinsic cost of litigation in this forum.

 In sum, the evidence of record demonstrates that the convenience of parties and witnesses and the interests of justice dictate the severance and transfer of the controversy between Mobil and Grace.

 It is therefore ordered that (1) the cause of action against Grace and Pontiac-Champlin be severed; (2) the resulting cause of action against Pontiac-Champlin be stayed on the docket pending the prompt prosecution of the other claim; and (3) the resulting cause of action between Mobil and Grace be transferred to the New Haven Division of the United States District Court for the District of Connecticut within ten days.

The Clerk shall furnish a copy of this Memorandum and Order to each counsel of record. Counsel for Grace will promptly prepare and submit an appropriate order to counsel for Mobil for approval as to form and then to the Court for signature.

10. Plaintiff argues that the prejudices to it which would arise from a delay in trial are the inconveniences caused by (1) delay in receiving damages; and (2) the problems of placating its present patent licensees. This type of inconvenience, if proven, would not be sufficiently prejudicial to sway the balance of justice against transfer where, as here, the factors of convenience weigh so heavily, toward trial in the transferee forum. Burroughs Corp. v. Newark Electronics Corp., supra, 317 F.Supp. 192; Leesona Corp. v. Duplan Corp., supra, 317 F.Supp. 302; Blue Bell, Inc. v. Jaymar-Ruby, Inc., supra, 311 F.Supp. 943–944.

SUPPLEMENTAL MEMORANDUM
AND ORDER ON PLAINTIFF'S
MOTION FOR RECONSIDERA-
TION

A. *Background Statement*

In its Memorandum and Order of May 28, 1971, this Court granted several motions previously filed by the defendants. Mobil Oil Corp. v. W. R. Grace & Co. and Pontiac Refining Co., (Civil Action No. 67–H–424) (S.D.Texas, May 28, 1971). The Memorandum and Order accomplished the following: 1. Severed the causes of action filed against the defendants creating two new causes of action; 2. Stayed the resulting cause of action between Mobil and Pontiac-Champlin; and 3. Transferred to the Federal District Court sitting in New Haven, Connecticut the resulting and remaining cause of action between plaintiff and W. R. Grace & Co. Thereafter, at the behest of Mobil the Court stayed the execution of its order for ten days from June 7, 1971, in order to allow Mobil an opportunity to file a motion for reconsideration.

On June 17, 1971 Mobil submitted its motion which included a request that in the event the Court should vacate its order, certain issues be certified to the Court of Appeals for the Fifth Circuit pursuant to 28 U.S.C. § 1292(b). Accompanying the motion were a brief and several affidavits. On June 23, 1971 the defendants filed an affidavit and a brief in opposition.

On June 25, 1971, in order to clarify certain matters raised in the parties' papers, the Court held a hearing which was attended by local counsel for each of the parties. On June 30, 1971 Mobil filed a clarification of its position on several of the issues it had previously raised by the submission of a supplemental brief and affidavit.

Mobil is now raising two new contentions and reurging several others. In summary, Mobil asserts that: (1) the defendants' motions were time-barred because the case had been pending since May 29, 1967 and the parties' trial prep-
arations were nearing completion; (2) the defendants were barred from maintaining their motion because of statements they made in accompanying pleadings; (3) the Court considered irrelevant evidence in making its decision; (4) the severance and stay of the Mobil v. Pontiac-Champlin cause would more greatly prejudice the plaintiff than the Court initially realized; and (5) a recent United States Supreme Court decision required this Court to give the plaintiff's choice of venue greater significance.

B. *Background of Motion for Reconsideration*

On May 29, 1967 Mobil instituted this patent infringement action. Thereafter, the parties proceeded with voluminous discovery and pleading modifications, the bulk of the discovery to date having been accomplished in the latter part of 1970 but continuing to and being unfinished at this time.

In the winter of 1970 the Court set the cause for pretrial on March 12, 1971 and trial on April 12, 1971. At pretrial, counsel announced that they would be ready for trial but noted that they had come to loggerheads and would need the Court's aid in resolving some discovery questions.

Because of the Court's then-existing docket condition, local counsel for the parties were asked to confer with the Court in chambers on March 30, 1971. At that time additional unresolved discovery matters were pending. Counsel were told that the April 12, 1971 trial setting would have to be cancelled and the trial postponed. The reasons were reviewed with counsel.

The Court suggested that the parties consider the feasibility of the Court appointing one of the local Federal Magistrates to act as special master to hear the matter pursuant to Rule 53, Fed.R.Civ.P. The local counsel advised the Court they would inform their respective New York trial counsel of the Court's suggestion.

On April 2, 1971 the Court met with all counsel in chambers. At that time

the Court repeated in substance what was told local counsel on March 30. Counsel then indicated no objection to the appointment of a master as such but did say that the appointment of one of the Magistrates as a master was unacceptable. Counsel expressed willingness to attempt to agree upon one or more attorneys who would be acceptable to their clients for appointment, and to submit same to the Court within two weeks.

At no time during either the March 30, 1971 or the April 2, 1971 conferences did the Court infer to counsel that it would never be able to try the case. A later trial setting by the Court was not discussed. The sense of the meeting was that a master could probably be agreed upon and that the original trial setting— before a master—or a short postponement thereof, would be feasible. At that time no objection had been voiced by either party to the appointment of a master, acceptable to both parties as well as to the Court.

The case then took an unexpected turn. On April 14, 1971 and before the expiration of the two week period, defendants filed the instant motions to transfer and noticed them for submission on April 26, 1971. In their submission papers defense counsel used language which the Court construed to be in deference, especially in view of the fact defendants were obviously abandoning efforts to agree upon a master. Thereafter, as the Court had previously announced it would hear counsel on April 26, 1971 concerning pending discovery matters, the scope of that hearing was enlarged to include oral argument on the defendants' motions to transfer.

At no time during oral argument did defendants indicate that they desired or intended to abandon their motions to transfer or the relief requested therein. The Court took the motions under advisement and entered its order thereon May 28, 1971.

### C. *Mobil's Contentions*

1. Mobil's first assertion in its present motion was discussed in some depth by the Court in its prior memorandum

and order at pages 15–16. There the Court pointed out that the time when a party makes a motion for transfer under § 1404(a), 28 U.S.C. § 1404(a) (1948) as amended (1962), "is not *in and of itself* a factor preventing transfer." The Court then pointed out that "the prejudice caused by the timing of a motion is only one factor to be balanced by the Court in its consideration of whether justice would be served by a transfer." *See for example:* General Tire & Rubber Co. v. Watkins, 373 F.2d 361 (4th Cir. 1967) (en banc), certiorari denied Firestone Tire and Rubber Co. v. General Tire & Rubber Co., 386 U.S. 960, 87 S. Ct. 1031, 18 L.Ed.2d 109 (1967); Sypert v. Miner, 266 F.2d 196 (7th Cir. 1959); General State Authority (of Pa.) v. Aetna Cas. & Sur. Co., 314 F.Supp. 422, 424 (S.D.N.Y.1970); Blue Bell v. Jaymar-Ruby, Inc., 311 F.Supp. 942, 943–944 (S. D.N.Y.1969); Sypert v. Bendix Aviation Corp., 172 F.Supp. 480 (N.D.Ill. 1948) mandamus denied sub nom. Sypert v. Miner, 266 F.2d 196 (7th Cir. 1959), cert. den. 361 U.S. 832, 80 S.Ct. 82, 4 L.Ed.2d 74 (1959); Bowers v. A. H. Bull & Co., 144 F.Supp. 646 (S.D. N.Y.1956); Molloy v. Bemis Bros. Bag Co., 130 F.Supp. 265 (S.D.N.Y.1955). United States v. Swift & Co., 158 F.Supp. 551 (E.D.N.Y.1958).

In United States v. Swift & Co., supra, a transfer was approved 35 years after judgment had been entered for the purpose of adjudicating the scope of the Court's prior order. In Sypert v. Bendix Aviation Corp., supra, the case was awaiting retrial because the jury had been unable to reach a verdict when the transfer was approved. General Tire & Rubber Co. v. Watkins, supra, had already been partially litigated when the Court of Appeals for the Fourth Circuit granted the appellant's request for a mandamus and transferred the cause to a more expeditious forum. In another exemplary case the defendant's motion for transfer was granted although discovery was almost completed and the cause was set upon the court's trial-ready docket. Bowers v. A. H. Bull & Co., supra. Molloy v. Bemis Bros. Bag

Co., supra, is similar to the *Bowers* decision. There the transfer was granted even though the cause had been pending on the transferor court's docket for three years and the pretrial discovery was almost completed.

In several cases it has been pointed out that the decision of transfer motions is preferable in the later stages of a cause's development. This is true because the transferor court is then better qualified to visualize the factors implicit in its determination. A. C. Nielsen v. Hoffman, 270 F.2d 693, 696 (7th Cir. 1959); Sypert v. Miner, supra; Webster-Chicago Corp. v. Minneapolis-Honeywell Reg. Co., 99 F.Supp. 503 (D.Del. 1951).

As was pointed out by this Court in its earlier memorandum and order at pp. 10–12, 16, 20, n. 10, any prejudice which the plaintiff might suffer as a result of defendant's motion is insufficient to counteract the overwhelming convenience to the parties and witnesses which would be achieved by the transfer. See pp. 16–21 of the May 28, 1971 memorandum and order.

Assessed in their entirety, Mobil's actions in this cause create a strong suggestion of forum shopping. If such should be the case, it is worthy of note that forum shopping is not looked upon with favor by the federal courts. Clayton v. Warlick, 232 F.2d 699, 706 (4th Cir. 1956); Chicago R. I. and P. Ry Co. v. Igoe, 212 F.2d 378, 382 (7th Cir. 1954); Polaroid Corp. v. Casselman, 213 F.Supp. 379, 384 (S.D.N.Y.1962); De Luxe Game Corp. v. Wonder Products Co., 166 F.Supp. 56, 58 (S.D.N.Y.1958); Rayco Mfg. Co. v. Chicopee Mfg. Co., 148 F.Supp. 588, 592–594 (S.D.N.Y. 1957); Paragon-Revolute Corporation v. C. F. Pease Company, 120 F.Supp. 488, 491 (D.Del.1954); *cf.*: William Gluckin & Company v. International Playtex Corporation, 407 F.2d 177 (2nd Cir. 1969).

2. Mobil's second assertion is incorrect. At oral argument, in their briefs, and in their affidavits defendants have vigorously urged that the convenience of the parties and the witnesses, as well as the interests of justice, dictate that the cause be transferred.

Examined in this light the language in defendant's pleadings which Mobil asserts to be a waiver is no more than language displaying defendants' courtesy to this Court. Until a motion is withdrawn this Court is duty bound to apply the law to the facts presented to it and to render a decision, as has been done.

3. Mobil's attack on the evidence which this Court considered is misplaced. If plaintiff had proceeded to read the next two paragraphs on page 20 of the May 28, 1971 memorandum and order, it would have seen that the Court acknowledged the inaccuracy of applying the questioned evidence, and thereafter concluded that no evidence had been presented from which the Court might determine whether the parties could receive a faster trial in the transferee forum.

4. Mobil's fourth contention concerning additional prejudice to it from the severance and stay of its claims against Pontiac-Champlin plows no new ground and is rejected. See pages 8–12 and 20, n. 10 of the Court's May 28, 1971 memorandum and order; *see also*: Amperex Electronic Corp. v. Perry, 168 U.S.P.Q. 615 (7th Cir. 1970); Gellman v. L. Karp & Sons, 109 F.2d 391 (7th Cir. 1940); Ransburg Electro-Coating Corp. v. Williams, 246 F.Supp. 626 (W.D.Ark.1965).

5. Mobil's last assertion is rejected. The United States Supreme Court in Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971) did not increase the significance of the plaintiff's choice of forum in patent cases. The case is inapposite and clearly distinguishable.

D. *Mobil's Alternative Request for § 1292(b) Certification to the Court of Appeals*

As the Court has found its previous decision on the merits of the defendants' motions to have been correct, the plaintiff's alternative request for a § 1292(b) certificate recommending interlocutory appeal must be decided. 28

U.S.C. § 1292(b). If this were a case similar to that before this Court in E. F. Hutton & Co. v. Brown, 305 F.Supp. 371, 401–403 (S.D.Tex.1969), Mobil's request would probably have been granted. But the cause at bar is not.

Once the facts are developed, all that remains is plaintiff's disagreement with this Court's application of settled legal principles to the facts of the case. Such a discretionary ruling is not within the limited class of cases set out in 28 U.S.C. § 1292(b) for certification. *See*: Garner v. Wolfinbarger, 433 F.2d 117, 120 (5th Cir. 1970) (and cases cited therein); [1,2] *see also*: 1 Barron and Holtzoff, Federal Practice and Procedure, § 86.7 (C. Wright ed. 1960).

Accordingly, for the reasons stated herein, it is ordered that the plaintiff's motion for reconsideration is in all things denied. The Clerk shall file this writing and thereupon transmit this cause to the United States District Court sitting in New Haven, Connecticut. The Clerk shall send copies to all counsel.

---

1. In Garner v. Wolfinbarger, supra, the Court of Appeals for the Fifth Judicial Circuit states:

 We are of the view that § 1292(b) review is inappropriate for challenges to a judge's discretion in granting or denying transfers under § 1404(a). The Congressional policy against piecemeal appeals, as expressed in the final judgment rule, 28 U.S.C. § 1291, to which § 1292 (b) is a narrow exception, is eroded by permitting review of exercise of the judge's discretion under § 1404(a) as a "controlling question of law." Our conclusion is the same as that already reached by the Second, Third, and Sixth Circuits,[4] and by the text writers.[5]

 The temptation is great when an interlocutory appeal is properly taken from one order, and the record is before us, and the parties themselves may desire a declaration on the validity of another interlocutory order not independently appealable under § 1292(b), to consider everything on a sort of ad hoc pendent jurisdiction basis. Apparently this is what happened in Time, Inc. v. Manning [366 F.2d 690 (5th Cir.)]. A similar case is Koehring Co. v. Hyde Construction Co., 324 F.2d 295 (5th Cir. 1963), where appellant appealed from denial of a motion to dismiss on grounds of lack of jurisdiction in Mississippi and of alternative § 1404(a) and § 1406(a)[6] motions to transfer to Oklahoma. Without considering the question of availability of review, we held that we need not reach the jurisdiction issue because the case should be transferred to Oklahoma. There are several considerations against piecemeal appeals. It is contrary to the language of § 1292(b), which is in terms of the appealability where "*such order* involves a controlling question of law." The issue is not one of convenience to the litigants, or even to this court, but of appellate jurisdiction. The ad hoc approach invites the parties to inject a sham issue as the vehicle to bring the case to this court at the interlocutory stage for a declaration on an order not otherwise reviewable. And it confuses the courts and the parties, who assume that because a discretionary transfer order has been reviewed in one case it can be reviewed in any other. (Footnotes omitted).

 *Id.*, at 120.

2. The cases relied upon by plaintiff in its brief were discussed and either rejected or construed in a light favorable to this Court's instant decision by the Court of Appeals in *Garner*.